**The below described is SIGNED.**

**Dated: June 27, 2008**

_____
**JUDITH A. BOULDEN
U.S. Bankruptcy Judge**

Signed as modified by the Court.



_____

Adam S. Affleck (#5434)
Andrew B. Clawson (#10409)
**PRINCE, YEATES & GELDZAHLER**
A Professional Corporation
City Centre I, Suite 900
175 East 400 South
Salt Lake City, UT 84111
Telephone: (801) 524-1000

Attorneys for Chapter 7 Trustee, J. Kevin Bird

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH
Central Division

| | |
|---|---|
| In re<br><br>RICHARD LEO SMITH,<br><br>Debtor. | Bankruptcy Case No. 04-24754 JAB<br>(Chapter 7)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| J. KEVIN BIRD, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>THUNDER RIVER CONSTRUCTION, INC. and HIDDEN VALE MANAGEMENT, INC.,<br><br>Defendants. | Adversary Proceeding No.<br>07-2113<br><br>[submitted electronically] |

Filed: 06/10/08

This matter was tried before the Court, without a jury, on June 27, 2008. Andrew B. Clawson appeared for J. Kevin Bird (the "**Trustee**"). The pro se Defendants did not appear.

Having considered the evidence and arguments presented, the Court now enters its findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

The facts in normal typeface are from the statement of uncontested facts in the Final Pretrial Order. The facts in italics typeface are facts established by the evidence at the hearing.

1. On March 25, 2004, the Debtor filed a petition for chapter 7 bankruptcy protection (the "**Petition Date**").

2. *Since at least 2001 or 2002, and through about December 2003, the Debtor was employed by Defendant Thunder River Construction, Inc. ("**Thunder River**") (the "**Employment Period**").*

3. *During the Employment Period, Thunder River's business included providing construction and repair service to property management companies.*

4. *Thunder River's most important property-management client during that period was Hidden Vale Management, Inc. ("**Hidden Vale**").*

5. At all times relevant to the claims in this adversary proceeding, Thunder River was owned or controlled by Paul Eves, and Hidden Vale was owned or operated by Joy Eves.

6. Joy Eves and Paul Eves were and are husband and wife.

7. During the Employment Period, the Debtor, as an employee of Thunder River, provided construction and repair services on Hidden Vale projects.

8. In late 2001 or early 2002, the Debtor entered into separate oral agreements with Thunder River and Hidden Vale.

9. Under his agreement with Thunder River (the "**Thunder River Agreement**"), the Debtor and Thunder River agreed that when the Debtor used his own money or credit to purchase goods, materials, or services for use on Thunder River's projects, or that otherwise provided a benefit to Thunder River, Thunder River would reimburse the Debtor for such expenditures with interest. The Debtor paid all of the relevant expenses by credit card.

10. Similarly, under his agreement with Hidden Vale (the "**Hidden Vale Agreement**"), the Debtor and Hidden Vale agreed that when the Debtor, as an employee of Thunder River, used his own money or credit to purchase goods, materials, or services that were used on Hidden Vale projects, or that otherwise provided a benefit to Hidden Vale, Hidden Vale would reimburse the Debtor for such expenditures with interest. The Debtor paid all of the relevant expenses by credit card.

11. During the Employment Period, the Debtor, using his own money or credit, paid $15,000 for goods, materials, and/or services that were used on projects

3

that Thunder River was under contract to complete for Hidden Vale or that otherwise benefited both Thunder River and Hidden Vale (the "**Unreimbursed Expenditures**").

12. The Unreimbursed Expenditures provided a benefit to Thunder River.

13. The Unreimbursed Expenditures provided a benefit to Hidden Vale.

14. Thunder River was aware of the benefit that it received by virtue of the Unreimbursed Expenditures.

15. Hidden Vale was aware of the benefit that it received by virtue of the Unreimbursed Expenditures.

16. Although Thunder River and Hidden Vale reimbursed the Debtor for other expenditures, neither company ever reimbursed the Debtor for the Unreimbursed Expenditures which was one of the factors precipitating the Debtor's bankruptcy filing.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334.

2. The parties have consented to entry of final orders herein under 28 U.S.C. § 157.

3. Venue is properly placed in§ this Court under 28 U.S.C. § 1409.

### Breach of Contract By Thunder River and Hidden Vale

4. Under Utah law, an oral agreement that is not described in Utah's statute of frauds is enforceable if its terms and conditions are sufficiently definite to allow it to be enforced.

5. Neither the Thunder River Agreement nor the Hidden Vale Agreement is

described in Utah's statute of frauds. See Utah Code Ann. § 25-5-1 et seq.

6.  The terms and conditions of the Thunder River Agreement—under which the Debtor and Thunder River agreed that when the Debtor used his own money or credit to purchase goods, materials, or services for use on Thunder River's projects, or that otherwise provided a benefit to Thunder River, Thunder River would reimburse the Debtor for such expenditures with interest—are sufficiently definite to allow the Thunder River Agreement to be enforced.

7.  The terms and conditions of the Hidden Vale Agreement— the Debtor and Hidden Vale agreed that when the Debtor, as an employee of Thunder River, used his own money or credit to purchase goods, materials, or services that were used on Hidden Vale projects, or that otherwise provided a benefit to Hidden Vale, Hidden Vale would reimburse the Debtor for such expenditures with interest—are sufficiently definite to allow the Thunder River Agreement to be enforced.

8.  Accordingly, both the Thunder River Agreement and the Hidden Vale Agreement are valid oral agreements under Utah law.

9.  The Debtor incurred the Unreimbursed Expenditures to purchase goods, materials, or services for use on Thunder River's projects, or that otherwise provided a benefit to Thunder River.

10. Thunder River breached the Thunder River Agreement by failing to reimburse the Debtor for the Unreimbursed Expenditures.

11. The Debtor incurred the Unreimbursed Expenditures, while he was employed by Thunder River, to purchase goods, materials, or services that were used on Hidden Vale projects, or that otherwise provided a benefit to Hidden Vale.

12. Hidden Vale breached the Thunder River Agreement by failing to reimburse the Debtor for the Unreimbursed Expenditures.

13. The Debtor's right to enforce the Thunder River Agreement and the Hidden Vale Agreement became property of the estate on the Petition Date. See 11 U.S.C. § 541.

14. Because of their breach of the Thunder River Agreement and the Hidden Vale Agreement, Thunder River and Hidden Vale are jointly and severally obligated to reimburse the Trustee for the Unreimbursed Expenditures and for interest at the statutory rate of 10% per annum from December 31, 2003. See Utah Code Ann. § 15-1-1 (statutory interest rate).

### Thunder River and Hidden Vale are Liable In *Quantum Meruit*

15. Under Utah law, "Quantum meruit is an equitable tool that allows a plaintiff to receive restitution for the reasonable value of services provided to the defendant. See Emergency Physicians Integrated Care v. Salt Lake County, 167 P.3d 1080, 1083 (Utah 2007) (citing to J & M Constr., Inc. v. Southam, 722 P.2d 779, 780 (Utah 1986) (per curiam); Christensen v. Abbott, 671 P.2d 121, 123 (Utah 1983); Foulger v. McGrath, 34 Utah 86, 95 P. 1004, 1007 (Utah 1908); Davies v. Olson, 746 P.2d 264, 269 (Utah Ct. App. 1987); Black's Law Dictionary 1255 (7th ed. 1999) ("A claim or right of action for the reasonable value of services rendered.").

16. Under Utah law, there are two branches to the doctrine of quantum meruit: (1) a "contract implied in law (also referred to as unjust enrichment or quasi-contract), and (2) a "contract implied in fact." Id.

17. To prove the existence of a contract implied in law under Utah law (i.e., unjust enrichment or quasi-contract), a plaintiff must establish that: (1) the defendant received a benefit; (2) that the defendant appreciated or had knowledge of the benefit; and (3) that under the circumstances, it would be unjust for the defendant to retain the benefit without paying for it. Id.

18. By making the Unreimbursed Expenditures, the Debtor conferred a benefit on Thunder River.

19. Thunder River appreciated or had knowledge of the benefit that it received by virtue of the Unreimbursed Expenditures.

20. Under the circumstances, it would be unjust to allow Thunder River to retain the benefit of the Unreimbursed Expenditures without paying for it.

21. By making the Unreimbursed Expenditures, the Debtor conferred a benefit on Hidden Vale.

22. Hidden Vale appreciated or had knowledge of the benefit that it received by virtue of the Unreimbursed Expenditures.

23. Under the circumstances, it would be unjust to allow Hidden Vale to retain the benefit of the Unreimbursed Expenditures without paying for it.

24. Accordingly, Thunder River and Hidden Vale are each jointly and severally obligated, in quantum meruit, to pay the Debtor the value of the Unreimbursed Expenditures plus 10% interest from December 31, 2003.

25. Under 11 U.S.C. § 541(a) the Debtor's right to recover the value of the Unreimbursed Expenditures from Thunder River and Hidden Vale in quantum meruit became property of the bankruptcy estate.

26. Thunder River and Hidden Vale are both required to account for and deliver the value of Unreimbursed Expenditures to the Trustee under 11 U.S.C. § 542.

## CONCLUSION

Defendants Thunder River and Hidden Vale each entered into valid oral contracts to reimburse the Debtor for the Unreimbursed Expenditures. Because Thunder River and Hidden Vale breached those contracts by failing to reimburse the Debtor for the Unreimbursed Expenditures, Thunder River and Hidden Vale are obligated to reimburse the Trustee for the Unreimbursed Expenditures of $15,000 plus interest thereon at the statutory rate of 10% per annum from December 31, 2003.

In the alternative, because Thunder River and Hidden Vale (1) received a benefit because of the Unreimbursed Expenditures; (2) knew or should have known of the benefit that they were receiving because the Debtor was making the Unreimbursed Expenditures on their behalf; and (3) it would be unjust under the circumstances to allow them to retain the benefit of the Unreimbursed Expenditures without reimbursing the estate for the same, Defendants Thunder River and Hidden Vale, under the equitable

doctrine of quantum meruit and pursuant to 11 U.S.C. §§ 541 and 542, are obligated to account for and deliver the value of the Unreimbursed Expenditures of $15,000 plus 10% interest from December 31, 2003 to the Trustee. The Trustee is hereby directed to prepare a separate Judgment consistent with the foregoing and with a mailing certificate that provides for service of the signed Judgment on the Defendants.

---
End of Document

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **FINDINGS OF FACT AND CONCLUSIONS OF LAW** will be effected through the Bankruptcy Noticing Center to each party listed below.

Andrew B. Clawson
Prince Yeates & Geldzahler
175 East 400 South
Suite 900
Salt Lake City, UT 84111
    *Counsel for Plaintiff*

Thunder River Construction, Inc.
 c/o Paul G. Eves, Registered Agent
1030 Palos Verdes
Orem, UT 84058
    *Pro se Defendant*

Hidden Vale Management, Inc.
 c/o Amberlyn Eves, Registered Agent
361 East 1200 South
Orem, UT 84058
    *Pro se Defendant*